481 So.2d 109 (1985)
GENCORP, INC., Formerly General Tire & Rubber Company, Appellant,
v.
Joseph E. WOLFE and Adita J. Wolfe, Appellees.
No. BF-413.
District Court of Appeal of Florida, First District.
December 19, 1985.
Rehearing Denied January 28, 1986.
*110 Robert P. Gaines of Beggs & Lane, Pensacola, for appellant.
Charles E. Russell of Grass & Russell, P.A., Pensacola, for appellees.
MILLS, Judge.
Gencorp, Inc. appeals from a jury verdict in favor of the Wolfes in their suit against it for breach of implied warranty of merchantability, strict liability in tort and negligence. We reverse and remand for a new trial.
On 7 June 1981, Joseph Wolfe purchased two truck tires from Gencorp (formerly General Tire & Rubber Company) which were installed on the front of his tractor/trailer rig. The truck was then driven from Pensacola to Texas and back and from Pensacola to Miami. On 16 June, while driving north from Miami, the right front tire blew out, causing Wolfe to lose control of the truck and run off the road. At the time of the accident, the tires had been driven approximately 2,500 miles.
Immediately after the accident, Wolfe examined the tire, noting the site of the blowout ("close to the outside edge") and the tire's serial number. The driver of the wrecker summoned to tow the truck in for service also observed the tire, placing the blowout "on the side of the tire where the tread and sidewall meet." The wrecker towed the truck approximately 60 miles to a truck stop, placing it inside a fence for the night. The next morning the tire was gone.
Exhaustive searches by the wrecker driver and others of the route covered by the tow truck failed to turn up the tire. Word was spread throughout area truck stops to *111 look for the tire, described only as "a General tire, 10.00 x 22." Three or four months after the accident, a man, who could not later be identified, called a business associate of Wolfe's and claimed to have the tire. He delivered a tire with the same serial number noted by Wolfe and a blowout near the third tread in from the outside edge. This tire was forwarded to Wolfe, who had it taken to an expert tire analyst in Illinois.
At the trial of the case, this expert testified, over objection, that the tire evidenced a manufacturing defect in that the tread appeared improperly bonded to the carcass. He found no evidence of improper care or that the tire had struck a foreign object and stated that the tire was "very new." He acknowledged, however, that a serial number is not unique to one tire in that the number indicates the plant, week and year of manufacture. Therefore, hundreds of tires could have the serial number noted by Wolfe.
Gencorp's motion to strike the tire and the expert's testimony thereon from the record and to grant a directed verdict was denied. The trial court agreed over objection to instruct the jury pursuant to Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981), that "when a product malfunctions during normal operation, a legal inference of product defectiveness arises." The court rejected an instruction requested by Gencorp that, pursuant to Section 627.7372, Florida Statutes (1983), the jury was required to deduct all collateral source payments from Wolfe's damages, stating that the statute was inapplicable in a product liability case. The jury returned a verdict in Wolfe's favor.
Gencorp first contends that the trial court committed reversible error in failing to strike from evidence the tire and the expert's testimony thereon, in that Wolfe failed to show that the tire presented was the one involved in the accident. We agree. Despite Wolfe's testimony that the tire was the one at issue, neither this testimony nor any other evidence showed that the tire was in substantially the same condition at trial as at the time of the accident. The lack of such evidence is fatal to the admissibility of demonstrative evidence, Alston v. Shiver, 105 So.2d 785 (Fla. 1958), and consequently to the expert's testimony thereon.
Even though the trial court erred in admitting the tire and expert testimony thereon, the case could properly have been decided by the jury based on the occurrence of the accident, as testified to by Wolfe. In Cassisi, supra, the court recognized the difficulty facing a product liability plaintiff when, as here, the allegedly defective product is lost, and held that "there is one type of proof of product defectiveness which, from a given set of circumstances, aids a plaintiff in meeting his burden by creating a legal inference that the product was defective... . This inference arises from the occurrence of the accident itself." Cassisi at 1148. The court approved the holding in Greco v. Bucciconi Engineering Co., 283 F. Supp. 978 (W.D.Pa. 1967) aff'd. 407 F.2d 87 (3d Cir.1969), that "when a product malfunctions during normal operation, a legal inference ... of product defectiveness arises and the injured plaintiff thereby establishes a prima facie case for jury consideration." Cassisi at 1148.
Gencorp argues that the Cassisi inference does not apply to tire blowout cases, based on Goodyear Tire and Rubber Co. v. Hughes Supply Co., 358 So.2d 1339 (Fla. 1978), which held that the res ipsa loquitur standard is inapplicable in such cases. The Cassisi court recognized the Goodyear decision, and observed that "while the tire in Goodyear ... was not favored with the res ipsa inference ... it would most certainly be subject to the Greco inference of product defectiveness." Cassisi at 1151-52, n. 25. Therefore, even though it was erroneous to admit the tire itself and the expert's testimony thereon, the Cassisi inference was sufficient to create a jury issue.
Cassisi does not, however, sanction a jury instruction to the effect that a legal inference of product defectiveness arises *112 from the occurrence of malfunction during normal operation. This language is tantamount to directing a verdict in the product liability plaintiff's favor, which here was not supported by the evidence. Because we cannot know if the jury's verdict was permissibly based on the circumstances of the accident or impermissibly founded on the erroneous instruction, the judgment in Wolfe's favor must be reversed and the case remanded for a new trial.
For purposes of that trial, we also note that the trial court erred in refusing to instruct the jury to deduct from its verdict the value of all collateral source benefits received by Wolfe, pursuant to Section 627.7372(1), Florida Statutes (1983). That section provides:

In any action for personal injury or wrongful death arising out of the ownership, operation, use or maintenance of a motor vehicle, the court shall admit into evidence the total amount of all collateral sources paid to the claimant, and the court shall instruct the jury to deduct from its verdict the value of all benefits received by the claimant from any collateral source. (emphasis supplied).
The trial court found the statute inapplicable to this case because it stated a cause of action in product liability. However, a review of the complaint filed by Wolfe plainly shows that he sought damages for "personal injury ... arising out of the ownership, operation, use or maintenance of a motor vehicle." Therefore, the jury should have been instructed to deduct the benefits received by Wolfe pursuant to his wife's policy of health insurance.
The judgment is reversed, and the case remanded for a new trial, consistent with this opinion.
SHIVERS and ZEHMER, JJ., concur.