Jackie S. HUMPHREYS and David Humphreys, her husband, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 91–50256.

United States District Court, N.D. Florida.

Dec. 13, 1993.

Clark Fletcher, Panama City, FL, for plaintiffs.

Ernest H. Eubanks, Orlando, FL, for defendant.

COLLIER, District Judge.

Defendant, General Motors Corporation, moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (doc. 108). Plaintiffs, Jackie and David Humphreys, have opposed this motion. After reviewing the pleadings, evidence of record and the legal briefs of the parties, the Court concludes Defendant's motion for summary judgment must be GRANTED.

### Background

This suit arose out of a four-car accident occurring on November 9, 1987 on State Road 390 at or near its intersection with Main Avenue in Panama City, Florida. During the accident, the Plaintiffs' vehicle, a 1985 Chevrolet Cavalier station wagon, was struck in the rear and allegedly pushed into the back of the vehicle in front of it.

At the time, Jackie Humphreys was driving the Chevrolet and she suffered injuries as a result of the collision. Plaintiffs allege the injuries to Mrs. Humphreys were due, in part, to a failure of the Chevrolet's driver seat back locking device during the accident. Allegedly, the seat back device failed upon impact and in some fashion injured Mrs. Humphreys.

Plaintiffs originally filed this case in Florida Circuit Court for Bay County, Florida. Defendant promptly removed the action to this court on December 19, 1991. In their complaint, Plaintiffs included claims under strict liability, negligence and implied warranty based on alleged defects in the seat back and seat belt assemblies of their 1985 Cavalier. By Order dated June 23, 1992, the Court dismissed Plaintiffs claim under implied warranty, but allowed their claims under strict liability and negligence to stand (doc. 7).

At this point, the Court entered a scheduling order setting a discovery cut-off date of November 2, 1992. As part of its discovery, Defendant propounded interrogatories and requests to produce upon Plaintiffs. Defendant requested inspection of the car and the

allegedly defective components. The car and the allegedly defective components, however, were destroyed after Plaintiffs released it to the custody of their insurance carrier. Consequently, Defendant contends it has not had an opportunity to inspect the car or its seat back and seat belt. Furthermore, when Defendant requested Plaintiffs produce any photographs of or reports on the damaged vehicle, Plaintiffs responded by saying they had no such information in their possession. Indeed, the record at this point contains not a single photograph, report or affidavit attesting to the condition of the car after the accident and the alleged failure of the seat back and seat belt.

On September 14, 1992, Defendant presented its first set of 15 interrogatories to Plaintiffs. The first interrogatory asked Plaintiffs to specify the alleged defect and the facts upon which Plaintiffs relied in claiming the defect. The fifth interrogatory asked Plaintiffs to disclose any non-medical experts Plaintiffs would rely upon at trial. Although the responses to these interrogatories were due on October 14, 1992, Plaintiffs did not present Defendant with any answers until October 29. Even then, Plaintiffs submitted only draft answers to selected interrogatories. At this point, Defendant complained Plaintiffs' response to the defect interrogatory was insufficient. Furthermore, Plaintiffs for the first time disclosed their intent to call Mr. Bryant Buchner as an expert to testify about reconstructing the accident, occupant kinematics and the performance of the vehicle's seats and seat belts.

On November 13, 1992, the Court held a hearing regarding, among other things, Plaintiffs' responses to Defendant's interrogatories. The Court concluded Plaintiffs' response to the defect interrogatory was "totally and completely unsatisfactory" and ordered Plaintiffs to respond more precisely to Defendant's request. Furthermore, the Court concluded Mr. Buchner could not be called as an expert witness given Plaintiffs' tardy disclosure and the lack of any factual basis for his opinion. The Court also declined Plaintiffs' request to extend the discovery deadline because Plaintiffs had not showed any due diligence in pursuing discovery.

A week later, Plaintiffs provided their supplemental answer to Defendant's defect interrogatory. Plaintiffs described the alleged defect as follows:

[A] design defect of the front driver's seat back locking device. The defect is that the seat back was not designed strongly enough to maintain its integrity during moderate excellerations [sic] which in and of themselves would not cause permanent injuries as sustained by the Plaintiff in this accident. The facts relied upon regarding the defects are the accident report, speed, weight, types of vehicles involved, review of exempler [sic] vehicles, and statements of individuals that inspected the seat in Plaintiffs' vehicle.

Plaintiffs, however, have not submitted any evidence in the form of reports or affidavits to support this claim of a defect. Furthermore, as the case now stands, Plaintiff does not have any expert to testify about the presence of a defect and the causation of Mrs. Humphreys' injuries. It is on this basis that Defendant has moved for summary judgment.

### Analysis

#### A. Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). An issue of fact is "genuine" if the record as a whole could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "material" if it might affect the outcome of the case under the governing law. *Id.* On this motion for summary judgement, the Court must take the evidence in a light most

favorable to Plaintiffs. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992).

Initially, Plaintiffs argue Defendant has not properly supported its motion for summary judgment. Plaintiffs contend that in order to "show" there are no genuine issues of material fact, Defendants must present positive evidence in the form of affidavits, segments of depositions, and documents. Plaintiffs claim that since Defendant has not presented such evidence in conjunction with its motion, the motion is insufficient.

■ The Court disagrees with Plaintiffs' assessment of Defendant's burden under Rule 56. To begin with, though the record is admittedly thin on evidence, it contains portions of depositions, transcripts of the November 1992 hearing and Plaintiffs' answers to Defendant's interrogatories and requests for production. On a motion for summary judgment, the Court reviews the entire record—not just the memoranda and materials submitted by the parties in conjunction with the motion. *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir.1986). Here, the Court finds there is record evidence supporting Defendant's arguments on summary judgment.

Furthermore, Defendant's burden under Rule 56 of "showing" there are no genuine issues of material fact does not mandate citing record evidence at every turn. Rule 56(c) requires summary judgment to be entered when:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.

Although the rule cites various forms of evidence, a movant satisfies its burden if it "shows" the record reveals no genuine issues of material fact. Here, Defendant is attempting to show the record contains no evidence supporting several essential elements of Plaintiffs' claims. This is a legitimate method of demonstrating there are no genuine issues regarding Plaintiffs' claims under strict liability and negligence. *See Catrett,* 477 U.S. at 323–25, 106 S.Ct. at 2553–54. To hold, as Plaintiffs apparently argue, that Defendant can only make this showing by presenting positive evidence demonstrating the nonexistence of evidence would be nonsensical. In essence, Plaintiffs seek improperly to place the burden on Defendant to affirmatively disprove the elements of Plaintiffs' cause of action.

In this regard, the Court adopts the reasoning of Judge Rubin in *Fontenot v. Upjohn Company,* 780 F.2d 1190 (5th Cir.1986). As Judge Rubin aptly noted:

The crucial question for the court is whether there is a "genuine issue" of fact concerning any essential element of the claim on which judgment is being sought. If the moving party can show that there is no evidence whatever to establish one or more essential elements of a claim on which the opposing party has the burden of proof, trial would be a bootless exercise, fated for an inevitable result but at continued expense for the parties, the preemption of a trial date that might have been used for other litigants waiting impatiently in the judicial queue, and a burden on the court and taxpayers.

*Fontenot,* 780 F.2d at 1195.

■ Judge Rubin has captured the essence of the situation before the Court today. Consequently, because Plaintiffs bear the burden of proving the essential elements of strict liability and negligence at trial, Defendant is permitted to rely upon the complete absence of proof of an essential element of Plaintiffs' case to support its motion for summary judgment. *Id.; see Pelletier v. Zweifel,* 921 F.2d 1465, 1504 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). This is especially true when Plaintiffs have had ample time for discovery and Defendant has had no access to evidence of disproof. *See Fontenot,* 780 F.2d at 1195.

## B. Strict Liability

■ In their complaint, Plaintiffs allege claims under strict liability and negligence. Florida has adopted the doctrine of strict liability in products liability cases as set out in § 402A of the Restatement (Second) of

Torts.[1] *West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla.1976). In order to hold a manufacturer strictly liable, a plaintiff must establish:

(1) the manufacturer's relationship to the product in question,

(2) the defect and unreasonably dangerous condition of the product, and

(3) the existence of the proximate causal connection between such condition and the user's injuries or damages.

*Id.* In his motion for summary judgment, Defendant contends there is no evidence establishing (1) the existence of any defect in the 1985 Cavalier, (2) that the car reached Plaintiffs without substantial change in its condition, and (3) proximate causal connection between any alleged defect and Plaintiffs' injuries. Defendant argues that since there is no genuine issue of material fact on these essential elements of Plaintiffs' strict liability claim, it is entitled to judgment as a matter of law.

■ On the issue of whether there was a defect, the Court initially notes the difficulties Plaintiffs have had in describing the alleged defect. As noted earlier, Plaintiff waited until a week before discovery ended to even hint at the nature of the alleged defect. Only after the Court ordered Plaintiffs to answer Defendant's defect interrogatory in a more thorough manner did Plaintiffs specify "a design defect of the front driver's seat back locking device."

Given the hesitancy with which Plaintiffs specified the defect, it is not surprising the record reveals no evidence substantiating the defect. First and foremost, Plaintiffs cannot produce the primary evidence of the defect: the broken seat itself. As noted above, the vehicle was destroyed after the accident. Furthermore, the record contains no photographs, diagrams or reports describing the condition of the seat back after the collision.[2]

Apparently, Plaintiffs are relying on their testimony and the testimony of other witnesses to establish a defect. In his deposition, David Humphreys recalled seeing the seat back broken after the accident. Mr. Humphreys, however, presents no further evidence that the seat back was defective. Indeed, the deposition reveals Mr. Humphreys could recall little about the overall condition of the car after the accident. While Plaintiffs list witnesses who viewed the car after the accident and supposedly would testify about the defect, Plaintiffs have not filed any affidavits from these witnesses to counter Defendant's motion for summary judgment.

Finally, Plaintiffs have no expert to testify as to existence of a defect. Plaintiffs argue this is not a complicated case and jurors could rely on common sense to determine whether the seat back locking device was constructed with sufficient strength to accomplish its purpose.[3] The Court, however, disagrees with this conclusion. This is not a case where the defect is patent. Rather, Plaintiffs claim the seat back device failed

---

1. As set out in *West*, § 402 A of the Restatement provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
  (a) the seller is engaged in the business of selling such a product, and
  (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
  (a) the seller has exercised all possible care in the preparation of his product, and
  (b) the user or consumer has not brought the product from or entered into any contractual relation with the seller.

*West*, 336 So.2d at 84.

2. In its request for production, Defendant asked Plaintiffs to produce any such documents or photographs. At the time, Plaintiffs claimed they possessed no such information. To date, Plaintiffs have not filed any such evidence with the Court. Thus, it appears there are no contemporaneous photographs or written descriptions of the car to substantiate the defect.

3. Indeed, Plaintiffs compare a jury's task in this case to determining whether "a fishing pole, a rope, a baseball bat, or a bridge" is constructed strongly enough to serve its purpose. Frankly, the Court cannot understand how determining whether a car's seat back locking device malfunctioned as a result of a rear-end collision is comparable to determining whether a fishing pole or baseball bat is designed improperly.

under the stress of rear-end collision. Proving the defect requires relating the force of the collision, the design and construction of the device, and occupant kinematics. Evaluating this relationship is beyond the capacity of lay persons and requires expert testimony. *See Huddle v. Levin,* 537 F.2d 726 (3d Cir. 1976); *Bauman v. Volkswagenwerk,* 621 F.2d 230, 233–34 (6th Cir.1980). Here, Plaintiff has no expert who can testify at trial on this question. More importantly for the purposes of summary judgment, Plaintiff has not presented an expert's affidavit supporting the conclusion the device was defective.[4] Thus, the Court agrees with Defendant that Plaintiffs have presented no evidence, beyond their answer to Defendant's interrogatory, of the alleged defect. This interrogatory answer is not, by itself, sufficient to create a "genuine" issue of material fact.

■ Attacking a second element of Plaintiffs' strict liability claim, Defendant contends there is no evidence Plaintiffs' 1985 Cavalier reached them without substantial change in the condition in which it is sold. Plaintiffs respond by claiming this is not an element of strict liability under Florida law as stated in *West* and its progeny. Though Plaintiffs acknowledge *West* adopted § 402A of the Restatement (Second) of Torts, Plaintiffs contend Florida law since then has not imposed this element on plaintiffs. Not surprisingly, Plaintiffs cannot cite any cases supporting this novel interpretation of Florida products liability law.[5]

A little over a year ago, the Florida Supreme Court reaffirmed that under *West* and § 402A, a plaintiff must prove the product at issue reached them without substantial change of condition. *See High v. Westinghouse Electric Corp.,* 610 So.2d 1259, 1262 (Fla.1992). Here, Plaintiffs have produced no evidence in the form of affidavits, depositions, or documents establishing this element. Moreover, the record indicates Plaintiffs bought the 1985 Cavalier used with between 20,000 and 30,000 miles on it. Plaintiffs have not produced any maintenance records for the car or filed an affidavit of the prior owner demonstrating the car was not altered or damaged before the Plaintiffs purchased the vehicle. Under these circumstances, Plaintiffs have not shown there is a genuine issue of material fact on this element of their

---

4. Plaintiffs cite several Florida cases for the proposition that summary judgment may not be granted on the basis of expert testimony or the lack thereof. The Court, however, finds these have little persuasive value. As Plaintiffs acknowledge, the Florida cases interpret Florida law on evidence and procedure. The instant case, however, is governed by the Federal Rules of Procedure and Evidence and the case law interpreting these rules. Thus, the conclusion a Florida court would reach regarding Plaintiffs' need for expert testimony to survive summary judgment has little relevance here.

5. In their memorandum of law, Plaintiffs cite *High v. Westinghouse Electric Co.,* 610 So.2d 1259 (Fla.1992) and *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc.,* 588 So.2d 631 (Fla. 3d Dist.Ct.App.1991) as demonstrating Florida courts have interpreted *West* as requiring plaintiffs in strict liability cases to prove only three elements, namely: (1) the manufacturer's relationship to the product; (2) the defect and unreasonably dangerous condition; and (3) proximate causal connection between such condition and the user's injury or damage.

As a statement of the rule enunciated in *West,* Plaintiffs are entirely correct. Plaintiffs, however, misconstrue *West*'s paraphrasing of § 402A of the Restatement. While § 402A's requirement that the product at issue "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold" is not specifically listed here, the first two elements of the *West* test clearly encompass this requirement. In order to establish the manufacturer's "relationship to the product," a plaintiff must demonstrate the item at issue was in fact produced by the defendant manufacturer and reached the plaintiff in the condition in which it left the manufacturer's control. Otherwise, if the product was substantially altered after it left the manufacturer's possession, then it cannot, in fairness, be called the "manufacturer's" product. Similarly, a plaintiff must demonstrate a defect existed at the time the product left the manufacturer's control. If the defect arose because someone other than the manufacturer substantially altered the product, then the manufacturer did not cause the injury and cannot be held liable.

To re-iterate, while the *West* court cited only three elements, it was paraphrasing the requirements of § 402A—the standard it explicitly adopted for strict liability in products liability cases. *See West,* 336 So.2d at 84–87. Moreover, neither *High* nor *Casa Clara* support Plaintiffs' contention that Florida courts do not require Plaintiffs to demonstrate they received the product without substantial alteration.

claim.[6]

Finally, Defendant contends Plaintiffs have not presented any evidence the alleged defect proximately caused Mrs. Humphreys' injuries. As noted above, to hold a manufacturer strictly liable under *West*, a plaintiff must demonstrate their injuries were proximately caused by the alleged defect. *West*, 336 So.2d at 87. Again, Plaintiffs have produced no evidence on this issue. Although the record reveals Mrs. Humphreys suffered injuries as a result of the accident, there is no indication a failure of the seat back locking device caused any of her injuries. Indeed, given Plaintiffs have no evidence of any defect, it almost naturally follows they have not presented any evidence linking the defect to Mrs. Humphreys' injuries. Thus, Defendant has shown there is no genuine issue of fact regarding the alleged defect proximately causing Plaintiffs' injuries.[7]

■ Plaintiffs attempt to overcome the weakness of their evidentiary proof by arguing the Court should apply the *Cassissi* inference to this case. According to *Cassissi*, if a product malfunctions during normal operation, a legal inference arises that the product was defective both at the time of the injury and at the time it was within the control of the supplier. *Cassissi v. Maytag Co.*, 396 So.2d 1140, 1148 (Fla. 1st Dist.Ct. App.1981). If this inference applies, then Plaintiffs will have established a prima facie case for jury consideration and summary judgment must be denied on their strict liability claim. *See id.* Defendant, however, contends the inference does not apply under the circumstances of this case.

Florida courts have applied the *Cassissi* inference in a variety of products liability cases. *See e.g., Jones v. Heil Co.*, 566 So.2d 565, 567 (Fla. 1st Dist.Ct.App.1990) (defective garbage truck); *Thrasher v. Koehring Co.*, 543 So.2d 754 (Fla.3d Dist.Ct.App.1988) (defective construction crane); *Marcus v. Anderson/Gore Homes, Inc.*, 498 So.2d 1051, 1052 (Fla. 4th Dist.Ct.App.1986) (defective household hot water heater); *Gencorp, Inc. v. Wolfe*, 481 So.2d 109, 111 (Fla. 1st Dist.Ct. App.1985) (defective truck tire). While it is tempting to generalize about the types of products and malfunctions this inference applies to, the Court does not feel it is necessary to do so in this case. As the *Cassissi* court made clear, there are only two essential predicate facts for the inference to apply: (1) a malfunction (2) during normal operation. *Cassissi*, 396 So.2d at 1151.

Here, the record indicates neither of these facts exists. As explained above, Plaintiffs have presented no evidence of any defect in the car's seat back locking device. While the seat back may have broken during the accident, this does not automatically mean the seat "malfunctioned." To establish that the

---

6. Plaintiffs argue Defendant should not be allowed to raise the issue of alteration because it has not presented any evidence on this issue, conducted no discovery directed to this issue, and did not mention alteration in the pre-trial stipulation. Plaintiffs go so far as to call Defendant's argument on this element "litigation by ambush." In essence, Plaintiffs contend Defendant has waived the right to make this argument.

The Court strongly disagrees. Since Plaintiffs brought this suit under a strict liability theory, the issue of whether the 1985 Cavalier reached Plaintiffs without substantial alteration has been with this case since it was filed. This is a necessary element of Plaintiffs' cause of action. Furthermore, since Plaintiffs bear the burden of proving this element at trial, it is nonsense to argue Defendant necessarily bears the burden of discovery and production of evidence on this issue. Like the other essential elements of strict liability, it is the Plaintiffs—not Defendant—who bear the burden of producing evidence on this element.

7. At this point, the Court makes no determination as to whether Plaintiffs' bear the burden of proving the exact amount which Mrs. Humphreys' injuries were "enhanced" by the alleged defect. The parties dispute vigorously whether this is an "enhancement of injuries" case where the reasoning of *Huddle v. Levin*, 537 F.2d 726 (3d Cir.1976) should apply. At this point, the Court is inclined to agree with Plaintiffs that under *McLeod v. American Motors Corp.*, 723 F.2d 830 (11th Cir.1984), Plaintiffs are not obligated to follow *Huddle*'s requirement that they prove, essentially through expert testimony, the precise extent to which the alleged defect enhanced the injuries caused by the collision. The Court, however, need not reach this issue. Rather, the Court concludes Plaintiffs have failed to present evidence even linking the alleged defect to Mrs. Humphreys' injuries. Thus, Plaintiffs have failed to show there is any genuine issue of material fact regarding causation. Under these circumstances, whether Plaintiffs bear the extra burden under *Huddle* is moot.

seat back malfunctioned, Plaintiffs must present evidence—most likely through expert testimony—that it did not perform properly under the circumstances. As noted earlier, Plaintiffs have not submitted any affidavits or written reports supporting the conclusion the seat back was defective or malfunctioned.

Meanwhile, this case does not involve the "normal use" of a 1985 Cavalier station wagon. The seat back device allegedly malfunctioned as the result of a rear-end collision involving four cars. This is hardly the "normal use" of an automobile. While the Court agrees that certain automobile components like seat belts are designed and intended to prevent injury during an accident, it still cannot be said that being rear-ended at an intersection is a normal, recurring event while driving. Rather, a collision subjects the car and its safety devices to abnormal and uncertain stresses. Whether a component failed under these circumstances is not obvious as was the case with the clothes dryer at issue in *Cassissi*.

Thus, the Court concludes the *Cassissi* inference does not apply here. Accordingly, the Court finds Defendant has carried its burden of showing the record reveals no genuine issue of material fact as to Plaintiffs' claim under strict liability. Plaintiffs have failed to present any evidence (1) of a defect, (2) that the car reached them without substantial change, and (3) causation of injuries. Defendant is entitled to judgment as a matter of law on the claim brought under strict liability.

## C. Negligence

■ Plaintiffs have also brought a claim on the theory of negligence. The basic elements of a negligence action are well-established:

(1) a legal duty on the part of the defendant towards the plaintiff under the circumstances;

(2) a breach of that duty by the defendant;

(3) the defendant's breach of duty was both the actual and proximate cause of the plaintiff's injuries; and

(4) the defendant suffered damages as a result of the breach.

*Paterson v. Deeb,* 472 So.2d 1210, 1214 (Fla. 1st Dist.Ct.App.1985); *Simon v. Tampa Electric Co.,* 202 So.2d 209 (Fla. 2d Dist.Ct. App.1967).

Plaintiffs apparently base their negligence claim on several arguments. First, Plaintiffs allege Defendant negligently designed and manufactured the seat back of the car. Second, Plaintiffs allege Defendant failed to properly test and inspect the car to reveal the defect. Third, Plaintiffs claim Defendants failed to warn them of a known danger in the normal use of their 1985 Cavalier station wagon. Finally, Defendant failed to warn them of a foreseeable defect which can develop over time.

No matter what argument Plaintiffs rely upon, Defendant is entitled to summary judgment on the negligence claim. Regardless of the alleged duty owed by Defendant, Plaintiffs' negligence action is bottomed on the existence of a defect in the seat back locking device. As has been made abundantly clear by now, the record does not contain any evidence of a defect. If there is no defect, then Defendant has not negligently designed, tested or inspected the automobile. Furthermore, if there is no defect, then there is not any unforeseen danger. Thus, without any proof of a defect, Defendant cannot be said to have breached any duty towards Plaintiffs.

Meanwhile, Plaintiffs have not presented any evidence supporting their various negligence arguments. For example, the record does not contain evidence of Defendant's design and manufacture of the 1985 Chevrolet Cavalier station wagon. Nor have Plaintiffs presented any evidence of Defendant's testing and inspection of its products. Without this evidence, Plaintiff has failed to create a genuine issue of material fact regarding Defendant's duty to design, manufacture, and inspect the car at issue.

■ Plaintiffs' arguments regarding Defendant's duty to warn are speculative as well. In order to be held liable for failing to warn of a danger or a defect, the Defendant must have "known" or "had reason to know" of the danger or defect. *See Moorman v.*

**830**

American Safety Equipment, 594 So.2d 795, 801 (Fla. 4th Dist.Ct.App.1992); *Cohen v. General Motors Corporation, Cadillac Division,* 427 So.2d 389, 390 (Fla. 4th Dist.Ct. App.1983). Here, the record does not indicate Defendant knew or had any reason to know of a defect in the seat back locking device of the 1985 Cavalier station wagon. Nor is there any evidence Defendant had reason to suspect the car was dangerous because of the design of the seat back locking device. Plaintiffs' contention that Defendant must have known about the defect because of "the many cases in which claims have been brought successfully against manufacturers when the seat locking mechanism failed in vehicles" is hardly sufficient to create a genuine issue of material fact. This bare, conclusory statement without citation to any of the allegedly successful cases does not support the conclusion Defendant had any knowledge of a defect.

In sum, the Court concludes Defendant is entitled to summary judgment on the negligence claim as well. The record reveals no evidence of a defect and a breach of duty by the Defendant. Thus, there is no genuine issue of material fact and Defendant is entitled to judgment on this claim as a matter of law.

*Conclusion and Judgment*

The Court concludes Defendant's motion for summary judgment should be GRANTED as to all claims. Judgment is hereby entered in favor of Defendant, and Plaintiffs take nothing by this action. Costs to be assessed by clerk of the court. The Court will assess attorney's fees upon proper motion.