**Juan Lujan FREMAINT, et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, et al., Defendants.**

No. CIV. 01–1837(RLA).

United States District Court, D. Puerto Rico.

April 16, 2003.

José A. Gallart, Esq., Michelle Pirallo–Di Cristina, Esq., San Juan, PR, for Plaintiffs.

Manuel A. Guzmán–Rodríguez, Esq., Guzman & Steffens, San Juan, PR, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ACOSTA, District Judge.

Defendant Ford Motor Company (FORD) has moved for summary judgment, pursuant to Fed. R. Civ. Proc. 56(b) (docket No. 24), on the grounds that plaintiff cannot put forth a case for defective automobile and restraint system design without the use of expert testimony. Plaintiff's Opposition was filed on February 25, 2003 (docket No. 30).[1]

### BACKGROUND[2]

Plaintiff was driving from San Juan to Cataño in the right lane of Road No. 165 at around 1:30 p.m. on June 26, 2000, with his seatbelt fastened. Near the intersection close to the Bacardí plant, the vehicle's left front tire exploded at a speed of about forty-five (45) miles per hour. It had been raining and the pavement was wet at the time. Plaintiff braked, and the Explorer started spinning. The vehicle crossed over the shoulder of the road through an embankment, hit a post with its rear, and fell to its side.

Although his seatbelt remained fastened throughout the event, plaintiff contends it did not work because his body impacted against the steering wheel window and board.

At the Initial Scheduling Conference held on February 22, 2002, the Court established April 22, 2002 as the deadline for plaintiff to provide all expert witness reports, and May 24, 2002, as the deadline to amend the complaint to include the manu-

1. *See also,* Ford's Motion Requesting Leave to File the Tendered Reply... (docket No. **31**, filed on February 26, 2003), which is hereby **GRANTED**; and plaintiff's Surreply and Request for Dismissal Without Prejudice (docket No. **40**, filed on March 10, 2003). Request for dismissal is **DENIED** under separate order.

2. Limned from plaintiff's deposition taken on October 29, 2002, attached as Exhibit 1 to Defendant's Motion For Summary Judgment (docket No. **24**).

facturer of the tire. On May 14, 2002, FORD moved to dismiss or to exclude plaintiff's experts for failure to comply with Fed.R.Civ.P. 26(a)(2)(B) and this Court's directives. The Court excluded plaintiff's experts on June 6, 2002. Plaintiff did not amend the complaint to include the tire manufacturer.

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed. R.Civ.P. 56(c)). The record evidence must be construed "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000). "The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources." *Irizarry v. Corporacion Insular De Seguros*, 928 F.Supp. 141, 143 (D.P.R.1996) (citation omitted). A fact is 'material' if it "potentially affects the outcome of the case," *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997); and "genuine if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 187 (1st Cir.1997).

The record should be reviewed "in the light most favorable to [the party opposing the summary judgment request]," *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), quoting *Poller v. Columbia Broadcasting*

*System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (citations omitted).

While no credibility assessment "may be resolved in favor of the party seeking summary judgment," *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995); summary judgment may be appropriate "if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

Plaintiff's complaint asserts claims for defective design sounding in negligence and strict products liability.

Plaintiff does not claim that his Explorer malfunctioned, or that it failed to operate in a way which would be expected from other Explorer vehicles. Instead, plaintiff claims that the whole Explorer product-line was designed defectively and that FORD knew it was defective. Plaintiff also alleges that FORD had knowledge that the Explorer had stability problems, and, instead of correcting said defects or problems, it decided to market the product as one of the safest vehicles available. Thus, plaintiff argues, FORD should be held liable for the design features incorporated into the model.

### I. Negligence

To establish a claim of negligence, plaintiff must establish that "(1) defendant owed a duty to prevent the harm by conforming to a reasonable standard of conduct, (2) defendant breached that duty through a negligent act or omission, and (3) the negligent act or omission caused the plaintiff's harm." *Cruz Vargas v. R.J. Reynolds Tobacco Co.*, 218 F.Supp.2d 109, 119 (D.P.R.2002), quoting *Carballo–Rodriguez v. Clark Equip. Co., Inc.*, 147 F.Supp.2d 66, 72 (D.P.R.2001) (citing *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1171 (1st

Cir.1992)). Plaintiff "bear[s] the burden of establishing the applicable standard of care," and proving that the defendant "acted below that standard." *Id.*

In *Cruz–Vargas*, the Court granted summary judgment in favor of a manufacturer when plaintiff could not create a genuine issue of material fact as to whether the defendant negligently designed the product. Here, as in *Cruz–Vargas*, plaintiffs have not proffered any evidence regarding the applicable standard of care for designing the product in question or how defendant purportedly fell below such standard. *See* 218 F.Supp.2d at 119.

Plaintiff in this case lacks expert testimony as to the design issue. Therefore, he cannot establish the applicable standard of care for designing Explorers or seatbelt mechanisms. Similarly, plaintiff cannot establish that the Explorer failed to live up to the design characteristics of other vehicles in its class. Hence, a jury will not be in a position to determine whether FORD's design fell below the applicable standard.

Plaintiff's position is that it does not require an expert because FORD's negligence is documented in the documents themselves which were provided as exhibits to his opposition and which were allegedly generated by FORD in its regular course in business.

Based on these documents, plaintiff asserts: (1) that FORD was responsible for the design of the Ford Explorer; (2) that testing done since at least 1987, demonstrate the Explorer's lack of stability when in normal track situations; (3) that FORD's engineers suggested changes to correct the stability problems of the Explorer; (4) that FORD decided not to implement the changes specified by its own engineers.

Most of the documents submitted by plaintiff relate not to the Explorer production model itself, but to the UN–46 proto-

type which blurs the proof. (*See e.g.,* Exhs. 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 23, 25 and 27). Other documents, like those that relate to the Bronco II and Ranger models (Exhs. 11, 18, and 20), are even more discrepant from the design of the 1999 Explorer.

When passing on a summary judgment request, it is not incumbent upon the Court to "ferret through the record," looking for facts that may benefit the plaintiff. *Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 930–31 (1st Cir.1983); *Dominguez v. Eli Lilly,* 958 F.Supp. 721, 727 (D.Puerto Rico 1997); and *de Jesus v. Davila,* 184 F.R.D. 24, 26 (D.Puerto Rico 1996).

Bare allegations that disclose neither the substance or context or an assertion, nor the identity or capacity of the persons who make them, are insufficient to thwart summary judgment. *See e.g., Santiago v. Canon U.S.A.,* 138 F.3d 1, 5 (1st Cir.1998). Worse yet for plaintiff, contrary to Rule 56(e) requirements, the documents submitted with his opposition are unsubstantiated, conjectural, and fail to set forth the competency of the persons providing the statements. *See* Fed. R.Civ.P. 56(e). *See also, Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 796 (1st Cir.1992) *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993); *Sheinkopf v. Stone,* 927 F.2d 1259, 1271 (1st Cir.1991); *Rosado Serrano v. E.I. Dupont de Nemours & Co.,* 797 F.Supp. 98, 100 n. 2 (D.Puerto Rico 1992). Unsworn statements are not evidentiary in nature. *See Maldonado v. International Business Machines Corp.,* 56 F.R.D. 452, 454 (D.C.P.R.1972). Likewise, no foundation has been laid by the plaintiff for these documents. *See Nolla Morell v. Riefkohl,* 651 F.Supp. 134, 140 (D.Puerto Rico 1986). *See also, Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (hearsay evi-

dence not considered on a motion for summary judgment); and *F.D.I.C. v. Inmuebles Metropolitanos, Inc.,* 32 F.Supp.2d 485, 488 (D.Puerto Rico 1998) (although the parties and the court have "great flexibility with regard to the evidence that may be used on a motion for summary judgment," evidence adduced must be admissible).

Failing to establish a genuine issue of material fact as to these claims, summary judgment as to the negligence claims for defective design is therefore proper.

## II. Strict Liability

■ In strict liability, a product is defective in design "(1) if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner [the 'consumer expectations' test], or (2) if the plaintiff proves that the product's design proximately caused his injuries and the defendant fails to prove, in light of the relevant factors..., that on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design [the 'risk-benefit' test]." *Collazo–Santiago v. Toyota Motor Corp.,* 937 F.Supp. 134, 137 (D.P.R.1996), quoting *Barker v. Lull Engineering Co.,* 20 Cal.3d 413, 573 P.2d 443, 143 Cal.Rptr. 225 (1978). *See also, Carballo–Rodriguez v. Clark Equip. Co., Inc.,* 147 F.Supp.2d 66 (D.P.R.2001); and *Cruz Vargas v. R.J. Reynolds Tobacco Co.,* 218 F.Supp.2d 109, 119–120 (D.P.R.2002).

■ Plaintiff reportedly had a tire failure on a wet road while driving forty-five (45) miles an hour. He immediately applied the brakes, lost control of the vehicle, and veered off towards a green embankment. There, the vehicle tumbled over a depression or hit an obstacle, turning over on its side. Plaintiff was wearing his seatbelt at the time of the accident, which remained buckled. From this scenario, there are no facts that suggest that either the Explorer or the Explorer's seatbelt failed to perform as expected or designed.

The Puerto Rico Supreme Court has emphasized that a vehicle manufacturer "is not the insurer of every damage his [vehicle] may cause." *Quintana–Ruiz v. Hyundai Motor Corp.,* 303 F.3d 62, 71 (1st Cir.2002), quoting *Aponte Rivera v. Sears Roebuck de P.R., Inc.,* 145 D.P.R. 245, 1998 P.R.-Eng. 324486, 1998 WL 324486 (1998); *accord Rivera Santana v. Superior Packaging, Inc.,* 132 P.R. Dec. 115, 1992 P.R.-Eng. 754830, 1992 WL 754830 (1992) (same language) (quoting *Mendoza v. Cerveceria Corona, Inc.,* 1969 WL 21603, 97 D.P.R. 499 (1969)); and *Barker,* 143 Cal. Rptr. 225, 573 P.2d at 456 (the test stops short of making the manufacturer an insurer for all injuries which may result from the use of its product).

### A. Consumer Expectation Test

■ The consumer expectation test is inapplicable to cases involving claims of defects in the design of an automobile. *See Quintana–Ruiz v. Hyundai Motor Corp.,* 303 F.3d 62 (1st Cir.2002) ("the rule [is] that consumer expectations cannot be the basis of liability in a case involving complex technical matters."). *See also, Collazo–Santiago,* 937 F.Supp. at 140 (recognizing that instructing the jury on the consumer expectations test would "impermissibly permit a jury to find liability on little more than intuition or whim"). A jury cannot be "left free to find a violation of ordinary consumer expectations." *Id.* (citations omitted).

In *Quintana–Ruiz,* the plaintiff was injured when an airbag deployed in a rear-end collision of about thirty (30) miles per hour. A jury found for the plaintiff, and the defendant appealed. In vacating the verdict and finding for the defendant, the First Circuit held that a consumer expec-

tations theory was not available to the plaintiff:

> *Barker* ... made clear that when the ultimate issue of design defect calls for a careful assessment of feasibility, practicality, risk and benefit, the case should not be resolved simply on the basis of ordinary consumer expectations.

The California Supreme Court has held that "the consumer expectations test is reserved for cases in which the *everyday experience* of the product's users permit a conclusion that the product's designs violated *minimum* safety assumptions." The court specifically observed that the "ordinary consumer of an automobile simply has 'no idea' how it should perform in all foreseeable situations, or how safe it should be made against all foreseeable hazards." *Quintana–Ruiz*, 303 F.3d at 77. (Citations omitted) (emphasis in original).

Thus, the availability of the test "depends not on the challenged product itself, but on the complexity of the alleged defect." *Id.*, 77 n. 13.

As an example of what may be reasonably expected from motor vehicles (hence, when the test may be applied) the California Supreme Court observed that "ordinary consumers of modern automobiles may and do expect that such vehicles will be designed so as not to explode while idling at stoplights, experience sudden steering or brake failure as they leave the dealership, or roll over and catch fire in two-mile-per-hour collisions." *Soule v. Gen. Motors Corp.*, 8 Cal.4th 548, 34 Cal. Rptr.2d 607, 882 P.2d 298, 308 n. 3 (1994) (citations omitted).

Under the circumstances of the case at bar, an ordinary consumer would simply not know what minimum safety to expect from a Ford Explorer, or from any other SUV or passenger vehicle. Quite the opposite, ordinary consumers could expect that when a vehicle's tires deflate, it may lose traction when its brakes are applied at forty-five (45) miles per hour on a wet road, and may consequently overturn in uneven terrain or when hitting off-road obstacles. In addition, ordinary consumers are ill-equipped to decide what minimum safety to expect from seatbelts once a vehicle is involved in an accident, as manufacturers cannot warranty against all foreseeable injuries caused inside properly working vehicles.

### B. "Risk–Benefit" Test

In *Quintana–Ruiz*, the First Circuit vacated a verdict when plaintiff presented no expert testimony on alternate design and the parties agreed that the challenged design aspect was a conscious design decision of the manufacturer. *Cf. Collazo–Santiago*, 149 F.3d at 25–26 (challenged design aspect involved unforeseen consequence not intended by product).

Furthermore, an important part of the risk-utility test is the question of whether there is a safer alternate design which is mechanically feasible. *Quintana–Ruiz*, 303 F.3d at 71, quoting *Barker*, 143 Cal.Rptr. 225, 573 P.2d at 455; and *Rivera Santana*, 1992 P.R.-Eng. 754830 n. 9, 1992 WL 754830 (1992). This analysis in turn hinges upon the availability of expert testimony on alternate design. *Id.* at 77 (when the consumer expectations test cannot be the basis of liability, a jury must rely on expert testimony and cannot substitute its own experience).

Without any expert testimony, plaintiff cannot establish an alternate, safer design and meet his burden of proof. Furthermore, plaintiff cannot establish that the injuries received by him in the accident would not have occurred but for the Explorer's challenged design characteristics.

### CONCLUSION

In sum, the plaintiff has failed to lay the groundwork necessary to submit his case

before a jury. No evidence was brought forth to create a genuine issue of material fact on the subject submitted before the Court. The mere attachment of technical engineering documents, without adequate explanation, does not create an issue of material fact as to whether there is a defect in the vehicle in question, and does not overcome the burden imposed under Rule 56(e). The tendered documents, at face value, only highlight the need for competent expert testimony to prove the alleged design defects. Plaintiff has not referred to any testing performed by a competent engineer or expert on suspension or restraint system design that would create a genuine issue of material fact to submit to the jury. Without testimony of this nature, the jury would be at a loss as to what to make of the highly technical and specialized issues of which the plaintiff complains. No genuine issue for a jury exists; the complaint must therefore be DISMISSED.

Judgment to issue.

IT IS SO ORDERED.

### FINAL JUDGMENT

The Court having dismissed this action through its Order issued on this date, it is

HEREBY ORDERED AND ADJUDGED that the complaint in this action be and the same is hereby **DISMISSED**.

IT IS SO ORDERED.

## ORDER DENYING PLAINTIFF'S REQUEST FOR DISMISSAL WITHOUT PREJUDICE OR TO STAY PROCEEDINGS

### Procedural Background

Trial in this action was scheduled to commence on March 25, 2003. Upon the conclusion of discovery on December 31, 2002, defendant FORD MOTOR COMPANY (FORD) filed a motion for summary judgment, on January 27, 2003. Plaintiff opposed on February 24, 2003, and FORD replied on February 26, 2003. At FORD's request, the Court stayed the trial pending its consideration of defendant's dispositive motion. Plaintiff then, on March 10, 2003, filed its surreply, requesting at the same time that the case be dismissed without prejudice or alternatively stayed pending resolution of plaintiff's administrative claim before the Puerto Rico State Insurance Fund.

### Discussion

Rule 41(a)(2) Fed. R. Civ. P. provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." A dismissal without prejudice should be permitted "unless the court finds that the defendant will suffer legal prejudice." *P.R. Maritime Shipping Authority v. Leith*, 668 F.2d 46, 50 (1st Cir.1981). Therefore, courts must assert their discretion to insure that such prejudice does not occur. *See Doe v. Urohealth Sys.*, 216 F.3d 157, 160 (1st Cir.2000).

In deciding whether to grant a Rule 41(a)(2) motion, courts typically look to "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Urohealth*, 216 F.3d at 160 (quoting *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969)).

A review of these factors in this action sway us in the direction of not dismissing this case without prejudice. The case commenced on June 22, 2001. At the Initial Scheduling Conference held on February 22, 2002, the Court queried plaintiff as to why the tire manufacturer had not been sued. Plaintiff advised that an expert had

not yet seen the tire. Defendant complained that the case had not been moving expeditiously because plaintiff's expert witness had not rendered a report. Thus, deadlines were established for plaintiff to comply with Rule 26(a)(2)(B) expert disclosures by April 22, 2002. *See* Minutes... (docket No. 12). This deadline was extended, but only until May 8, 2002, with the Court's admonishment that "[f]ailure to comply shall result in the imposition of sanctions, including but not limited to the striking of expert witnesses' testimony and/or sanctions upon counsel personally." *See* docket No. 16. Ultimately, plaintiff failed to comply, despite the Court's forewarning, and his experts were excluded. *See* docket No. 19. Defendant also was forced to move to compel production of the vehicle's tire for review by its experts. *See* docket No. 20. All of this delay resulted in a disrupted schedule which forced the Court to adopt a revised discovery timetable. *See* docket No. 23.

The record reflects that in all, FORD submitted five expert reports to the plaintiff on the liability aspects of the case alone; took the deposition of the plaintiff, three treating physicians, five fact witnesses, and issued four third-party production of documents requests. Plaintiff conducted no fact or expert witness discovery.

Upon the conclusion of discovery, FORD filed a motion for summary judgment based on the argument that plaintiff cannot prove its claims of defective design absent expert testimony. In opposition, plaintiff submitted documents which only buttress the claim that experts are indeed indispensable for him to prove his case.

Faced with the dire consequences of an apparently unwinnable case at trial, plaintiff, at the eleventh hour, opted to seek this dismissal or alternatively to stay the proceedings pending his long-known State Insurance Fund claim. The fact that the plaintiff, 1) knew of the pendency of his workman's compensation claim at the time he filed this action; and 2) brought it to the Court's attention short of two weeks prior to the scheduled trial; and 3) waited until a dispositive motion had been filed to inform the Court of the claim is, at a minimum, disconcerting, obstructive, and highly suspicious.

In any event, the existence of a pending workmen's compensation claim cannot thwart summary judgment at this juncture. Section 32 of the Puerto Rico Workmen's Accident Compensation Act states, where relevant, that

> "Neither the injured workman or employee nor his beneficiaries may institute any action, nor may compromise any cause of action that they may have against the third party responsible for the damages until after the expiration of ninety days from the date of the final and enforceable decision of the case by the Manager of the State Insurance Fund."

P.R.Laws Ann. tit. 11 § 32 (1997)

This Court has determined that the purpose behind this paragraph of the law is to grant the Manager of the State Insurance Fund the first opportunity to institute a proceeding against a responsible third party. *See In re Rio Piedras Explosion Litig.,* 35 F.Supp.2d 171, 175 (D.P.R.1998).

However, the action referred to in section 32 of the law does not belong to the Fund Manager, but rather to the injured worker. *Id.* Though it is clear that an action filed prior to the expiration of the ninety days after the decision of the Fund Manager is premature, only the Fund Manager may demand an annulment of a premature action in favor of its right of subrogation. *See Rivera Escobar v. Parke Davis & Co.,* 671 F.Supp. 895, 897 (D.P.R.1987)(citing *Alvarado v. Calaino Romero,* 104 D.P.R. 127 (1975)).

It is also well established that actions filed prematurely under section 32 are voidable, not void. *Rivera Escobar,* 671 F.Supp. at 897; *see also Perez Bonilla v. Mann Holly Sales and Service, Inc.,* 729 F.Supp. 1410 (D.P.R.1990). Furthermore, the *Rivera Escobar* court specifically rejected the notion that a prematurely filed suit against a third party cannot proceed. "[T]he question of prematurity has arisen in other contexts, and the courts have indicated that the actions are permitted to go forward..." 671 F.Supp. at 897.

For over a year and a half defendant invested substantial resources to defend itself against plaintiff's claims. Principles of judicial economy and fairness militate against either staying or dismissing this case without prejudice pending the decision of the Fund Manager.

In *In Re: Urohealth Sys.,* 252 F.3d 504 (1st Cir.2001), the First Circuit Court of Appeals made clear its disapproval, absent unusual circumstances, of either staying or dismissing claims once a matter has been properly brought to a district court's attention. [A] plaintiff cannot conduct a serious product liability claim in a federal court, provoke over a year's worth of discovery and motion practice, allow the case to reach the stage at which the defendant filed a full-scale summary judgment motion, and then when matters seemed to go badly for plaintiff, simply dismiss the case and begin all over again... *Urohealth,* 252 F.3d at 508.

This case is ready for summary disposition. Staying or dismissing without prejudice would cause legal prejudice to defendant, relinquish this court's jurisdiction, and encumber the speedy and efficient resolution of this case.

Accordingly, plaintiff's request for dismissal without prejudice or alternatively to stay the case pending resolution of his administrative claim before the State Insurance Fund is hereby **DENIED**.

IT IS FURTHER ORDERED that the Manager of the State Insurance Fund shall be notified of the Court's decision to grant defendant's motion for summary judgment, issued this day via separate Order.

IT IS SO ORDERED.