879 So.2d 103 (2004)
Francis B. FORCE, etc., et al., Appellant,
v.
FORD MOTOR COMPANY and Mazda Motor Corporation, Appellee.
No. 5D03-1897.
District Court of Appeal of Florida, Fifth District.
August 6, 2004.
*104 Kevin S. Cannon of Clayton & McCulloh, Maitland, and Joel S. Perwin of Joel S. Perwin, P.A., Miami, for appellant.
Wendy F. Lumish, Jeffrey A. Cohen and Cristina Alonso of Carlton Fields, P.A., Miami, for appellees.
*105 MONACO, J.
This is a product-liability case based on an alleged design defect. Francis B. Force, the plenary guardian of the person and property of Mark Francis Force, an incapacitated person, appeals from a final judgment in favor of the appellees, Ford Motor Company and Mazda Motor Corporation. The judgment was rendered by the trial court upon the return of a jury verdict of no liability with respect to a strict liability count that involved an automobile seat restraint system. The seatbelt shoulder restraint on Mark Force's vehicle had purportedly failed during a violent collision. The issue presented to us concerns specifically whether under the circumstances of this case the jury should have been instructed on the consumer-expectation test, as requested by Mr. Force. Because we find that Mr. Force was entitled to have the jury consider his case of this theory, we reverse.
The basic facts are not in serious dispute. Mark Force was operating his Ford Escort when he collided head-on with another vehicle that crossed into his lane while trying to pass. At the time of the collision Mr. Force was wearing his seatbelt and shoulder harness in the manner intended. He sustained a severe head injury as a result.
Mr. Force alleged in his complaint a count for strict liability on the theory that the seatbelt and shoulder restraint system did not lock properly at the time of the impact. More specifically, he asserted that because the lap belt locked as intended, he received no injuries to the lower part of his body. He claimed, however, that the retractor on the shoulder restraint failed to operate properly, that too much of the seat belt unspooled, creating excessive slack in the shoulder restraint, and that his head was seriously injured as a result.
The case proceeded to trial only on the strict liability count. At the charge conference Mr. Force proposed that standard jury instruction PL 5, which is based on section 402A of the Restatement (Second) of Torts, be given to the jury verbatim. That instruction, as it applies to the facts of this case, reads as follows:
A product is defective if by reason of its design the product is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.
A product is unreasonably dangerous because of its design if [the product fails to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer] [or] [the risk of danger in the design outweighs the benefits].
The first parenthetical of the second paragraph is known as the consumer-expectation test. The second parenthetical is called the risk-utility test. Mr. Force argued that he was entitled to submit his case to the jury on both theories. Ford and Mazda disagreed.
Ford and Mazda agreed that the second parenthetical proposed by Mr. Force-the risk-utility test-should be part of the jury charge. They argued with respect to the first parenthetical, however, that the consumer-expectation test is either not recognized in Florida, or, alternatively, that it is not applicable to complex design cases such as the seatbelt dispute in the present case. They asked, therefore, that the case be submitted to the jury only on the risk-utility theory. Their reformulation of the risk-utility test, and the instruction eventually given by the trial court, read:
A product is unreasonably dangerous when the foreseeable risks of harm posed by the product could have been *106 reduced or avoided by the adoption of a reasonable alternative design and the failure to use a safer alternative design renders the product unreasonably dangerous.[1]
The jury returned a zero verdict. This appeal ensued. Mr. Force seeks reversal because the trial court did not instruct the jury on the consumer-expectation test as expressed in PL-5.
In general terms, trial courts are granted broad discretion to formulate jury instructions, and a decision not to give an instruction requested by one of the parties will not be reversed unless the error complained of resulted in a miscarriage of justice, or unless the "failure to give the instruction was reasonably calculated to confuse or mislead the jury." Hart v. Stern, 824 So.2d 927, 929 (Fla. 5th DCA 2002), review denied, 842 So.2d 847 (Fla. 2003); see also Reyka v. Halifax Hosp. Dist., 657 So.2d 967 (Fla. 5th DCA 1995). The party who asserts instructional error of this kind must show that: (1) the requested instruction accurately states the law applicable to the facts of the case; (2) the testimony and other evidence presented support the giving of the instruction; and (3) the instruction was necessary to resolve the issues in the case properly. See Foreline Sec. Corp. v. Scott, 871 So.2d 906 (Fla. 5th DCA 2004); Hart; Reyka; Orange County v. Piper, 523 So.2d 196 (Fla. 5th DCA), review denied, 531 So.2d 1354 (Fla.1988).
With these precepts in mind, we consider the instruction on the consumer-expectation test requested by Mr. Force. In order to do so, we break this matter into two sub-issues. First, we will consider whether Florida recognizes and embraces the consumer-expectation test for design defects under any circumstances. If so, we will next explore whether Florida courts are to apply the consumer-expectation test to the seatbelt in question.

A. Does Florida Recognize the Consumer-Expectation Test For Design Defects?
In the byzantine world of products liability, there are three basic families of defects that may be the subject of strict product liability: manufacturing defects, design defects, and failures to warn. See E. Wertheimer, Calabresi's Razor: A Short Cut To Responsibility, 28 Stetson L.Rev. 105, 113 (1998). The present case concerns whether the seatbelt restraint system was defectively designed. Under the consumer-expectation theory a product is defectively designed if the plaintiff is able to demonstrate that the product did not perform as safely as an ordinary consumer would expect when used in the intended or reasonably foreseeable manner. See Fremaint v. Ford Motor Co., 258 F.Supp.2d 24, 29 (D.P.R.2003). Essentially, this test relies on deductive reasoning to conclude that the product is defective. Under the risk-utility theory a product is defectively designed if the plaintiff proves that the design of the product proximately caused the plaintiff's injuries and the defendant fails to prove that on balance, the benefits of the design outweigh the risk of danger inherent in the design. Id. Both parties agree that the risk-utility standard (or, as it sometimes called, the risk-benefit standard), is applicable to the present dispute.
At the time that jury instruction PL-5 was adopted in 1983, the Committee Notes reflect uncertainty with respect to whether either or both of the consumer-expectation and risk-utility tests should be given, because the Florida Supreme Court had not *107 specifically addressed the issue. As a result, the Committee defined "unreasonably dangerous" under both tests, but put brackets around each definition, and included the following comment:
Absent more definitive authority in Florida, the committee recommends neither test to the exclusion of the other and expresses no opinion about whether the two charges should be given alternatively or together. PL 5 provides language suitable for either standard, or both determined by the trial court to be appropriate.
Fla. Std. Jury Instr. (Civil Cases) PL 5, Note on use, cmt 5. The Supreme Court commented on the instruction in similar fashion at the time it was adopted, saying that: "[W]e emphasize that we are not deciding any question of law or correctness or applicability of the charge in any particular case. This is the responsibility of the trial judge and will depend on further development of the law on a case by case basis." See In Re Standard Jury Instr., 435 So.2d 782, 783 (Fla.1983). Since then, as Ford and Mazda candidly acknowledge, the question has remained washed in uncertainty. A number of cases, however, are guideposts.
Light v. Weldarc Co., Inc., 569 So.2d 1302 (Fla. 5th DCA 1990), was a product liability suit involving a pair of safety glasses that did not prevent a sliver of metal discharged from a power punch press from breaking through an eyepiece and partially blinding the plaintiff. The specific issue addressed by this court in that case was whether summary judgment for the manufacturer was properly entered. In discussing the strict liability count of the complaint, however, this court, citing section 402A of the Restatement (Second) of Torts, noted that, "The issue to be resolved is whether the product, at the time it left the seller's hands, is in a condition not contemplated by the consumer, which condition is unreasonably dangerous to the consumer." Thus, while the case did not turn on this point, it appears that this court recognized the applicability of the consumer-expectation test.
Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981), another summary judgment case, is also helpful. In the final analysis, the court there concluded that the flaw being considered was a manufacturing defect, and not a design defect, and that the consumer-expectation test was applicable in determining liability. It did note in dicta, however, that while the consumer-expectation standard is adequate to identify unintended manufactured defects, it is "more difficult to apply" to design defect cases. Id. at 1145. Nonetheless, the court did recognize that the consumer-expectation standard is applicable to some design defect cases.
A Florida case called to our attention by Ford and Mazda is Scheman-Gonzalez v. Saber Manufacturing Co., 816 So.2d 1133 (Fla. 4th DCA 2002). That case primarily considered the duty to warn, and is, thus, of limited utility in the consideration of the present design controversy. In the course of the opinion, however, the Fourth District Court found section 2(b) of the Restatement (Third) of Torts: Product Liability (1998), to be "instructive." The current Restatement iteration of the test to be applied says essentially that a product is defective in design "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design," and the failure to adopt the alternative design "renders the product not reasonably safe." This, of course, was the instruction that was requested by Ford and Mazda, and was eventually given by the trial court. Nevertheless, the Restatement (Third) position has not been adopted by any appellate court in Florida.
*108 The final Florida case suggested by the parties is Radiation Technology, Inc. v. Ware Construction Co., 445 So.2d 329 (Fla. 1983). Once again, however, that case is of limited benefit to our analysis. Because the focus of the Radiation Technology court was on the meaning of the term "inherently dangerous," it does not directly address whether the consumer-expectation standard is to be used in Florida.[2] The Supreme Court did, nevertheless, reference and use in its analysis section 402A of the Restatement (Second) of Torts, which includes the consumer-expectation standard.
One federal case interpreting Florida law on this issue is somewhat more pointed. Edic v. Century Products Co., 364 F.3d 1276 (11th Cir.2004), concerned a products liability suit brought by the parents of a child who sustained injuries after allegedly being ejected from a child restraint seat during a collision. In considering the issue of "normal use," the United States Court of Appeals for the Eleventh Circuit noted that:
[T]he normal use requirement from Cassisi is based on the consumer-expectations test from the Restatement of Torts (Second), which asks whether `the ordinary consumer's expectations [are] frustrated by the product's failure to perform under the circumstances in which it failed.' ... This, in turn, is generally a question of fact for the jury.
Edic, 364 F.3d at 1284.
In summary, the only cases that appear to address the consumer-expectation standard with any directness are Cassisi, Light, and Edic. In each instance, the applicability of the standard in Florida appears to be confirmed, at least for some products that are subject to strict liability considerations. While there has been criticism of the standard[3], it appears from a review of the authorities that most states use some form of the consumer-expectation test when considering product liability claims. See, e.g., Linda A. Sharp, Annotation, Products Liability: Consumer Expectations Test, 73 A.L.R. 5th 75 (2004). Indeed, Ford and Mazda have essentially agreed during the course of this appeal that the consumer-expectation test is one of the independent standards to be applied in at least some Florida products liability cases. We agree, as well, and so hold. Ford and Mazda take the position, however, that this standard is not appropriate in considering the alleged failure of seatbelts because of the complex nature of the device. We consider that next.

B. Does The Consumer-Expectation Standard Apply to Allegedly Defective Seatbelt Designs?
Ford and Mazda argue with some force that the consumer-expectation test cannot be applied to design defect claims involving complex products, in general, and seatbelts in particular. Their argument is summed up by the following passage from the appellees' answer brief:
Perhaps the most significant problem with the consumer-expectations test is *109 that an ordinary consumer of a complex product like an automobile "simply has `no idea' how it should perform in all foreseeable situations, or how safe it should be made against all foreseeable hazards." Soule v. General Motors, 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298, 308 (1994). Indeed, "a complex product, even when it is being used as intended, may often cause injury in a way that does not engage its ordinary consumers' reasonable minimum assumptions about safe performance." Id. at 308.
Mr. Force, on the other hand, argues that there is no merit to Ford and Mazda's contention that seatbelts are too complex to justify the use of the consumer-expectation test. We think there is some logic to the point made by Ford and Mazda. Some products may, in fact, be too complex for an ordinary consumer to have any expectations concerning their proper operation. Seatbelts seem to be one of those products on the cusp.
We have found no case in Florida that addresses the subject of the application of the consumer-expectation test to seatbelts with particularity, nor has any been pointed out to us by the parties. Authorities from outside the state, however, do offer guidance.
Ford and Mazda lean heavily on Fremaint v. Ford Motor Co., 258 F.Supp.2d 24 (D.P.R.2003), which specifically involved a purportedly defective seatbelt. Although Puerto Rico recognizes both the risk-utility and the consumer-expectation tests, the federal district court there found that the consumer-expectation test was not applicable to cases having to do with claims of defects in the design of an automobile. From the automobile in general, the court interpolated to seatbelts in particular, and said that "Ordinary consumers are ill-equipped to decide what minimum safety to expect from seatbelts once a vehicle is involved in an accident, as manufacturers cannot warranty against all foreseeable injuries caused inside properly working vehicles." Id. at 30. See also Pruitt v. General Motors Corp., 72 Cal.App.4th 1480, 86 Cal.Rptr.2d 4 (1999) (deployment of an air bag); Quintana-Ruiz v. Hyundai Motor Corp., 303 F.3d 62 (1st Cir.2002)(deployment of an air bag).
A larger number of courts that have considered the issue, however, suggest that the consumer-expectation test applies fully to seatbelt failures. In Cunningham v. Mitsubishi Motors Corp., Slip Op. C-3-88-582, 1993 WL 1367436 (S.D.Ohio 1993), for example, the court concluded that the consumer-expectation test was the proper standard to be used in judging seatbelt failures because:
Although the manner in which the seat belt in question operated may have been new, seat belts generally are familiar products for which consumers' expectations of safety have had an opportunity to develop, and the function which they were designed to perform is well known.
Id. at page 3. The Supreme Court of Alaska, in holding that the trial court did not err in permitting a jury to find that an automobile seat restraint system was defective using the consumer-expectation test, concluded that:
When a seat belt, designed to be an instrument of protection, becomes an instrument of life-threatening injury, a consumer is justified in concluding that it did not perform as safely as promised. A seat belt is a familiar product whose basic function is well understood by the general population.
General Motors Corp. v. Farnsworth, 965 P.2d 1209, 1221 (Alaska 1998). Similarly, the Supreme Court of Tennessee said that, "We are unwilling to accept the defendant's argument that ordinary consumers *110 cannot form expectations about the safety and performance of seat belts." Jackson v. General Motors, 60 S.W.3d 800, 804 (Tenn.2001). See also Hisrich v. Volvo Cars of N. Am., Inc., 226 F.3d 445 (6th Cir.2000) (air bags); Fisher v. Ford Motor Co., 13 F.Supp.2d 631 (N.D.Ohio 1998), aff'd, 224 F.3d 570 (6th Cir.2000) (air bags); Bresnahan v. Chrysler Corp., 32 Cal.App.4th 1559, 38 Cal.Rptr.2d 446 (1995) (air bags).
We conclude that there may indeed be products that are too complex for a logical application of the consumer-expectation standard. We leave the definition of those products to be sorted out by trial courts. With respect to seatbelts, however, we believe that the cases finding that they may be tested by the consumer-expectation standard are better reasoned and more persuasive. Accordingly, inasmuch as the jury instruction requested by Mr. Force accurately stated the applicable law, and the evidence supported the giving of the instruction, and the instruction was necessary to resolve the issues properly, we hold that Mr. Force was entitled to submit his case to the jury on both the risk-utility test and the consumer-expectation test, and, therefore, reverse and remand for a new trial.
REVERSED and REMANDED.
PLEUS and SILVERNAIL, JJ., Associate Judge, concur.
NOTES
[1] The instruction was based on the Restatement (Third) of Torts.
[2] Two other cases of limited applicability are Zimmer, Inc. v. Birnbaum, 758 So.2d 714 (Fla. 4th DCA), review denied, 786 So.2d 1193 (Fla.2000), which concerned the two-issue rule, and Sanchez v. Hussey Seating Co., 698 So.2d 1326 (Fla. 1st DCA 1997), which concerned a manufacturer's liability to by-standers. In both cases the consumer-expectation instruction was given to the jury by the trial court, but no analysis of the correctness of the instruction per se was provided.
[3] See, e.g., Mary J. Davis, Design Defect Liability: In Search of a Standard of Responsibility, 39 Wayne L.Rev. 1217, 1237 (1993); Henderson & Twerski, Achieving Consensus on Defective Product Design, 83 Cornell L.Rev. 867 (1998).