909 So.2d 901 (2004)
STA-RITE INDUSTRIES, INC., a Wisconsin corporation, Appellant,
v.
Lewis J. LEVEY, as Personal Representative of the estate of Lorenzo Peterson, a minor, Appellees.
No. 3D03-2980.
District Court of Appeal of Florida, Third District.
December 22, 2004.
Rehearing and Rehearing Denied August 23, 2005.
*902 Marlow Connell Valerius Abrams Adler & Newman, Coral Gables; Hicks & Kneale and Mark Hicks and Dinah Stein, Miami, for appellant.
Haggard, Parks, Haggard & Bologna and Andrew Haggard and Robert Parks and Michael Haggard, Coral Gables; Wetherington, Klein & Hubbart and Gerald T. Wetherington and Phillip A. Hubbart, for appellees.
*903 Before SCHWARTZ, C.J., and COPE and FLETCHER, JJ.
Rehearing and Rehearing En Banc Denied August 23, 2005.
SCHWARTZ, Chief Judge.
While visiting his mother at the Village Apartments, fourteen year old Lorenzo Peterson decided, along with a teenage friend, to swim in the complex's pool. During that innocent excursion he suffered severe brain injuries which occurred when, after removing an unsecured protective grate, he was caught in the powerful suction of the exposed drain. The efforts of numerous rescuers could not pull him out and, by the time the suction was released after it had become necessary to break down the locked door of a shack which housed the on and off switch, almost twelve minutes had passed. The boy had become catastrophically brain damaged and, at the time of the trial, was in a permanent vegetative state.[1]
His representatives brought claims against Roberta Segal, the owner of the Village Apartments, and All Florida Distributors, Inc., the company she hired to maintain and operate the pool. These potential defendants settled the cases against them for four million and three million dollars respectively. In this case, Sta-Rite Industries, Inc., the manufacturer of the pump, appeals from a judgment entered on a $104,409,053.20 jury verdict for the plaintiff, based on product liability theories of (a) defective design; and (b) failure properly to warn the owner and users of the pool of the dangers posed by permitting the drain to become exposed.
While we do not agree with Sta-Rite's primary contention on appeal that the evidence was insufficient to create a jury question as to its liability on either theory, we find reversible error in the trial court's treatment of the owner and maintenance company as Fabre[2] defendants. We also conclude that the damage verdict cannot stand and that any new trial must involve the issues, not only of the respective responsibilities of Sta-Rite, the owner, and maintenance company, but of damages as well.

I.
We first conclude that the evidence supports the jury verdict as to Sta-Rite's liability on both the defective product and reasonable warning issues:

1. Defective design.
The plaintiff's most prominent theory was that Sta-Rite's pump was "defectively designed," see West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976)(adopting Restatement (Second) of Torts § 402 A), because it did not contain a device which would automatically turn off the pump and its powerful suction effect within a few, harmless seconds after the drain had become clogged by a "foreign object" such as Lorenzo's body. In the light of the reasonable forseeability, raised by many similar incidents, that the drain cover would become improperly secured and thereafter removed with the horrendous consequences which might follow, we conclude that this theory is well sustained by the evidence. See Perry v. Red Wing Shoe Co., 597 So.2d 821 (Fla. 3d DCA 1992); Jones v. Heil Co., 566 So.2d 565 (Fla. 1st DCA 1990); Cox v. R.O. Corp., 470 So.2d 790 (Fla. 3d DCA 1985).
*904 Sta-Rite's primary contention to the contrary was that such a device was not reasonably available to a pump manufacturer when this one was sold to the apartment owner. See Cavanaugh v. Skil Corp., 164 N.J. 1, 751 A.2d 518 (2000); Smith v. Aqua-Flo, Inc., 23 S.W.3d 473 (Tex.Ct.App.2000); Allen v. Minnstar, Inc., 8 F.3d 1470 (10th Cir.1993). This is simply not correct. The plaintiff introduced extensive evidence, both expert and lay, which showed that such a device was indeed feasible at that time.[3] See § 768.1257, Fla. Stat. (2003) ("In an action based upon defective design, brought against the manufacturer of a product, the finder of fact shall consider the state of the art of scientific and technical knowledge and other circumstances that existed at the time of manufacture, not at the time of loss or injury.")[4]; Torre v. Harris-Seybold Co., 9 Mass.App.Ct. 660, 404 N.E.2d 96 (1980).
Sta-Rite surrebuts this evidence with a contention that the available technology did not include a perfected re-start mechanism which would automatically turn the pump back on  with the result that the system would be stopped for a period of time whenever, for example, a towel or leaves became caught in the drain. In our view, however, this makes no real difference. Applying the familiar risk-utility analysis,[5] it was for the jury to say whether the mere inconvenience caused by a temporary shut-down while the obstruction was cleared[6] was outweighed by the dangers of failing to have a switch-off at all.[7] See, e.g., Moyer v. Martin Marietta Corp., 481 F.2d 585 (5th Cir.1973). See also Auburn, 366 So.2d at 1167; Cintron v. Osmose Wood Preserving, Inc., 681 So.2d 859 (Fla. 5th DCA 1996); Light v. Weldarc Co., 569 So.2d 1302 (Fla. 5th DCA 1990); Jones, 566 So.2d at 565; Pike v. Frank G. *905 Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970). Of the cases which support this conclusion, we think that Martin Marietta is among the closest. There, the court upheld a products liability case based on the negligent failure properly to design an ejection system so as to preclude its operation while the plane was still on the ground and the consequent death of a test pilot, even though the danger would not have come into fruition without the intervening and quite unlikely disposal of a specific safety device during maintenance.

2. Failure to Warn.
There is little argument that a jury question was also presented as to the liability of Sta-Rite in failing reasonably to warn the purchaser and users of the pool about the extreme danger presented by a failure properly to maintain the grate, particularly in the light of similar severe accidents which occurred both before and after the sale of the pump in question.[8] See High v. Westinghouse Elec. Corp., 610 So.2d 1259 (Fla.1992); Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242 (Fla. 1st DCA 1984), pet. for review denied, 467 So.2d 999 (Fla.1985); Hiner v. Deere & Co., 340 F.3d 1190 (10th Cir.2003); Lewis v. Ariens Co., 434 Mass. 643, 751 N.E.2d 862 (Mass.2001); Ragans v. Miriam Collins-Palm Beach Laboratories Co., 681 So.2d 1173 (Fla. 2d DCA 1996); Hayes v. Spartan Chemical Co., 622 So.2d 1352 (Fla. 2d DCA 1993); Adams v. G.D. Searle & Co., 576 So.2d 728 (Fla. 2d DCA 1991), review denied, 589 So.2d 290 (Fla. 1991); Restatement (Third) of Torts: Products Liability § 10 (1998).
Sta-Rite's riposte to this evidence, however, is that inadequate warnings could not have been a legal cause of this accident because (a) Segal had in the past done no more than simply relay to All Florida any information about the pool, including the arguably insufficient warnings Sta-Rite had previously[9] given her and, (b) All Florida already knew of the risks involved anyway. We do not agree with this line of argument.
As we have previously held in Munoz v. South Miami Hospital, Inc., 764 So.2d 854 (Fla. 3d DCA 2000), review denied, 789 So.2d 348 (Fla.2001), one who does not warn with the urgency and intensity deemed required under the circumstances cannot say that failure would have made no difference. Accord Goolsby v. Qazi, 847 So.2d 1001 (Fla. 5th DCA 2003), review denied, 859 So.2d 515 (Fla.2003). This is the case even when, as in Munoz *906 the person to be warned  there, a physician who should have been informed by hospital employees of his newborn patient's dangerous condition  specifically claims that such a warning would not have affected his conduct. It is all the more true because, in this case, Segal explicitly testified that if she had been given the stringent warnings the jury could have found were required she would have taken appropriate action, including informing All Florida.[10]
While it is true that, as its employees acknowledged, All Florida was previously aware of a generalized requirement that the grate should be kept attached to the pool, the fact is that, despite that knowledge, the maintenance company did not in fact fix the grate in time to avoid the accident. Again, it must be assumed that a sufficiently emphatic warning would have made the difference. Indeed this is the very basis of the rule that warnings must be given with the urgency the circumstances, especially the potential dangers involved, require. See Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla.1958).

II.
We are nonetheless required to reverse the judgment on appeal because of fundamental error concerning the apportionment of liability between and among Sta-Rite, the pool owner and the maintenance company respectively.
The basis of this error was the trial court's acceptance of the plaintiff's contention that the case was appropriate for application of the "two accident" rule established in crashworthiness cases by D'Amario v. Ford Motor Co., 806 So.2d 424 (Fla.2001). The theory was that Lorenzo's injuries resulted from two separate "accidents"  the first occurring when his arm was initially caught in the suction of the exposed drain, and the second when (after a second or two passed without significant harm)  the suction was not released as it would have if such a device had been installed, so that Lorenzo remained caught for the extended period which resulted in his injuries. The upshot of the rulings accepting this contention was that, as the jury was specifically instructed, the significant negligence of the pool owner and the maintenance company in maintaining the grate and access to the switch off mechanism could be considered as a Fabre defense only with respect to the failure to warn claim. Because it related only to the "second accident" with which, on this theory, the maintenance of the pool itself had nothing to do, the jury was told that there was no Fabre defense as to Sta-Rite's defective design claim  which was the primary subject of the trial.[11] In accordance *907 with these instructions the jury apportioned liability for Lorenzo's damages at eighty percent to Sta-Rite, only twenty percent to the Village Apartments and, despite the extensive evidence of its negligent maintenance of the pool, nothing at all to the pool maintenance company.[12]
That determination, based on the "two-accident" ruling and its consequences, cannot stand. This is for the simple reason that, despite the plaintiff's successful attempts below to divide the indivisible, Lorenzo's fate may be viewed only as stemming from a single uninterrupted series of *908 events, to which all of the claimed negligent acts of all of the alleged negligent players contributed.
While the extent of the separate accidents  separate defenses holding of D'Amario has been roundly debated, see Edward M. Ricci, Theodore J. Leopold, and Benjamin Salzillo, The Minority Gets It Right: The Florida Supreme Court Reinvigorates The Crashworthiness Doctrine in D'Amario v. Ford, 78 Fla. B.J. 14 (June 2004); Larry M. Roth, The Florida Supreme Court Needs a Second Look at Second Collision Motor Vehicle Cases, 78 Fla. B.J. 20 (April 2004), there is no case or other authority which even suggests its applicability to a situation like this one, in which neither logic nor common sense would permit an artificial division of the causation of the plaintiff's damages into separate indistinguishable seconds-long intervals during all of which he remained in the same dangerous position. Bearint v. Dorell Juvenile Group, Inc., 389 F.3d 1339 (11th Cir. 2004). In other words, no rational person could find, as the jury was told it must, that the failure of Segal and All Florida to secure the grate or to provide ready access to an available means to turn off the pump had nothing to do with Lorenzo's ultimate condition.[13] The point is made in Jackson v. York Hannover Nursing Centers, 876 So.2d 8 (Fla. 5th DCA 2004). There, even though, unlike this case, two arguably separate incidents were involved, the court held that D'Amario did not apply when, like this case, the same indivisible injuries were claimed to have resulted from both of them. A fortiori, that case compels reversal on this point. See also, Bearint, 389 F.3d at 1347.
Those responsible for these acts of negligence must therefore be treated purely as joint tortfeasors with the manufacturer in this case. At any retrial of this case, therefore, the owner and maintenance company shall be treated as unqualified Fabre parties in the court's instructions and on the verdict form.[14],[15] Because the issues are interwoven, there must be a new trial on failure to warn as well as negligent design.

III.
Although it may be unnecessary to do so,[16] we also hold, for two reasons at the *909 very least, that the damage verdict must be set aside and that any retrial must include that issue as well.
1. On the facts and circumstances of this case, we conclude that the issues of liability and damages are so intertwined that the reversal and re-trial we have already required as to liability requires one on damages as well. Brooks v. Holsombach, 525 So.2d 910 (Fla. 4th DCA 1988); Benoit, Inc., v. District. Bd. Of Trs. of St. Johns River Cmty. Coll. of Fla., 463 So.2d 1260 (Fla. 5th DCA 1984); Medina v. Variety Children's Hosp., 438 So.2d 138 (Fla. 3d DCA 1983); Swan v. Wisdom, 386 So.2d 574 (Fla. 5th DCA 1980).
2. In the light of the equivocal and uncertain testimony that Lorenzo would enjoy a normal life expectancy of more than forty years, and the almost entirely speculative testimony that, despite his vegetative state, he actually suffered excruciating, "conscious" pain and suffering for all that period, the amount of the verdict is shockingly excessive, see Brown v. Stuckey, 749 So.2d 490 (Fla.1999); MBL Life Assurance Corp. v. Suarez, 768 So.2d 1129 (Fla. 3d DCA 2000); Jeep Corp. v. Walker, 528 So.2d 1203 (Fla. 4th DCA 1988); Slade v. Whitco Corp., 811 F.Supp. 71 (N.D.N.Y.1993), aff'd, 999 F.2d 537 (2nd Cir.1993), and as such, and as we find, contrary to the manifest weight of the evidence. Miller v. First American Bank and Trust, 607 So.2d 483 (Fla. 4th DCA 1992); Florida Nat'l Bank v. Sherouse, 80 Fla. 405, 86 So. 279 (1920); Ziontz v. Ocean Trail Unit Owners Ass'n, Inc., 663 So.2d 1334 (Fla. 4th DCA 1993); In re: Estate of Simon, 402 So.2d 26 (Fla. 3d DCA 1981).[17]

IV.
In accordance with these views and holdings, the judgment under review is reversed and the cause remanded for further proceedings consistent with this opinion and the appropriate law.
Reversed and remanded with directions.
NOTES
[1] We have been told that during the pendency of this appeal, indeed after oral argument, Lorenzo died. The possible legal effect of this fact is treated in note 16 infra.
[2] Fabre v. Marin, 623 So.2d 1182 (Fla.1993)(holding that non-party joint tortfeasor may be joined as quasi-defendant for purposes of apportioning damages with named defendant).
[3] Quoting the plaintiff's brief:

Paul McKain, a fire-rescue paramedic, testified that in the 1990's he and his brother-in-law took this well-known technology and developed a successful vacuum kill  switch for swimming pool pumps in McKain's home and his sister's swimming pool as a stand-alone product  utilizing "floor sweepings," "very common pieces of electronic equipment" obtained from "Radio-Shack." This device has since been tested and found workable by other experts  including Sta-Rite's own expert at trial. Mr. McKain repeatedly testified that the device was based on technology and scientific knowledge that was widely-known "for decades" long before 1989 when the Sta-Rite pump herein was manufactured. . . .
[4] That such a device has not been actually adopted by any pump manufacturer is of little or no significance. See The T.J. Hooper, 60 F.2d 737 (2d Cir.1932), cert. denied, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1933); Insurance Co. of North America v. Pasakarnis, 425 So.2d 1141, 1146 n. 10 (Fla. 4th DCA 1982)(Schwartz, J., dissenting), decision quashed, cause remanded, 451 So.2d 447 (Fla.1984); Nesbitt v. Community Health of South Dade, Inc., 467 So.2d 711 (Fla. 3d DCA 1985); Restatement (Third) of Torts: Products Liability § 2, comment d (1998)("If the plaintiff introduces expert testimony to establish that a reasonable alternative design could practically have been adopted, a trier of fact may conclude that the product was defective notwithstanding that such a design was not adopted by any manufacturer, or even considered for commercial use, at the time of sale.").
[5] See Auburn Mach. Works Co., Inc. v. Jones, 366 So.2d 1167, 1170 (Fla.1979); Fla. Std. Jury Instr. (Civ.) PL 5 ("A product is unreasonably dangerous because of its design if . . . the risk of danger in the design outweighs the benefits.").
[6] Such a process might also involve the repair or replacement of the drain cover which would also have the salutary effect of preventing any further incidents.
[7] Because the evidence is sufficient on this issue, we do not discuss the availability of the alternative so-called "consumer expectations" test. Compare Force v. Ford Motor Co., 879 So.2d 103 (Fla. 5th DCA 2004).
[8] As accurately stated in the plaintiff's brief:

It is undisputed that no warning of any kind appeared on the Sta-Rite pump. . . . In 1997, some eight years after the pump in this case was manufactured [and three years before Lorenzo's entrapment], Sta-Rite placed a proper warning on its pumps manufactured from that point on:
Warning. Hazardous suction. Risk of drowning or disembowelment from hair or body entrapment against suction outlets.
Keep covers on suction outlets at all times. Covers must be screw-fastened to outlets and agency certified to be anti-entrapment and anti-hair-entanglement.
Do not use pool unless all suction outlets are covered with undamaged, correctly installed covers or grates that are screw-fastened and agency certified to be anti-entrapment and anti-hair entanglement.
Pool must have at least two suction outlets per pump, spaced at least three feet apart.
But Sta-Rite failed to send this warning to its distributors to see to it that prior purchasers of this pump [including the Village Apartments in this case] received it  although it could have easily done so.
As a result, no such warning got to the owner of the Village Apartments prior to Lorenzo's tragic entrapment in this case.
[9] Contained in the literature accompanying the sale.
[10] This testimony was admitted without objection. But cf. Drackett Products Co. v. Blue, 152 So.2d 463 (Fla.1963).
[11] Thus, the court specifically instructed the jury as follows:

In your deliberations you are to consider several distinct claims. Plaintiff Lorenzo Peterson, alleges first that Defendant Sta-Rite was negligent in its defective design of the swimming pool pump and in its warnings to consumers on the issue of this pump, on the use of this pump, and that such negligence was a legal cause of damage to Peterson.
Peterson also alleges that, regardless of whether Sta-Rite was negligent or not, that Sta-Rite should be held strictly liable because Sta-Rite placed the swimming pool pump on the market in a defective condition unreasonably dangerous to use it.
Sta-Rite denies these claims and asserts that as a defense solely to the claim of negligent warning that the Village Apartments and All Florida Pool and Spa Center were also negligent in the maintenance and the use of the swimming pool pump.
Although Peterson's claims have been tried together each is a separate claim from the other and Peterson is entitled to have you separately consider the claims, therefore, in your deliberation you should consider the evidence as it relates to each claim separately as you would had each claim been tried before you separately.
The issues for your determination on the negligence claim of plaintiff, Lorenzo Peterson, are whether Defendant Sta-Rite was negligent in the design of the swimming pool pump thereby placing it on the market in a defective condition and whether Sta-Rite was also negligent in failing to warn the purchaser of the pump of a known danger in the operation of the pump and, if so, whether such negligence was a legal cause of loss, injury or damage sustained by Peterson.
Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances or in failing to do something that a reasonably careful person would do under like circumstances.
If the greater weight of the evidence does not support the negligence claim of Plaintiff Peterson against Defendant Sta-Rite, then your verdict on that claim should be for the Defendant Sta-Rite.
If the greater weight of the evidence does not support Plaintiff Peterson's negligence claim on the failure to warn, then you should consider the defense raised by the Defendant Sta-Rite.
On the defense the issues for your determination are whether the Village Apartment or All Florida Pool and Spa Center was negligent in their maintenance of the pool, supervision of the plaintiff or in their use of the swimming pool pump and, if so, whether such negligence was a contributing legal cause to the damages complained of.
* * *
If the greater weight of the evidence does not support the Plaintiff Peterson's negligence claim on defective design or strict liability claim of defective design, then your verdict on that claim should be for Peterson in the total amount of his damages.
If the greater weight of the evidence does support Peterson's negligent claim on failure to warn and does not support Sta-Rite's defense to this claim, then your verdict on that claim should be for Peterson in the total amount of his damages.
If the greater weight of the evidence does support Peterson's negligence claim on failure to warn and also supports Sta-Rite's defense to its claim, to this claim, then you should determine and write on your verdict form what percentage of the total fault is chargeable to each of the entities you have found negligent.
* * *
In determining the total amount of damages you should not make any reduction because of the negligence, if any, of Village Apartments or All Florida Pool and Spa Center. If you find for the Plaintiff Peterson only  if you find for the Plaintiff Peterson only on his negligence claim concerning the failure to warn, the court in entering judgment will reduce the total amount of damages by the percentage of negligence which you find chargeable to the Village Apartments and All Florida Pool and Spa Center. If you find for the plaintiff, Lorenzo Peterson, on his strict liability or negligent design claims, however, the court will make no such reduction of damages.
[12] In order to attempt to explain the inexplicable (the record of the jury's question shows that it too was totally nonplussed by the situation) the following chart may illustrate what the plaintiff contended, the trial judge bought, and the jury was instructed:

[13] That they paid millions of dollars each to avoid the consequences flowing from the fact that their negligent maintenance had contributed to the plaintiff's ultimate condition forcefully demonstrates that this is true.
[14] Because we have sustained the jury's separate findings that Sta-Rite was guilty of negligence which was a legal cause of the plaintiff's injuries, the jury shall be charged accordingly, with the concomitant instructions that the existence of and percentage of apportionment of the liability of either or both of the Fabre parties are entirely for its determination. See Shufflebarger v. Galloway, 668 So.2d 996 (Fla. 3d DCA 1995). While the defense of comparative negligence would otherwise have served proportionally to reduce all of the recoverable damages, we agree that the defense was properly stricken below as a matter of law. See Henry v. Britt, 220 So.2d 917 (Fla. 4th DCA 1969), cert. denied, 229 So.2d 867 (Fla.1969).
[15] In reversion to and contrast with note 12, the following chart represents the applicable law and therefore what the jury should be told at a retrial:

[16] Our reversal of the judgment on appeal on the Fabre issue may have pretermitted the necessity of discussion of any other issues in the case. This is because, although we leave formal rulings on the issue to the trial court in the first instance, the effect of the death of the plaintiff, see note 1 supra, upon the thus-reversed final judgment may be to "abate" the personal injury action entirely in favor of a yet-to-be brought action for Lorenzo's wrongful death. See § 768.20, Fla. Stat. (2002)("When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate."); Variety Children's Hospital, Inc. v. Perkins, 382 So.2d 331, 336 n. 1 (Fla. 3d DCA 1980)("Upon a hearing on the motion [to abate] held soon after it was filed, the court reserved ruling pending consideration of the appeal. We took this course because it is conceded by the appellees that, if the judgment were reversed on the merits, the action would again be `pending' in the lower court and would, by operation of Sec. 768.20, then be subject to abatement."); 1 Am.Jur.2d Abatement, Survival, and Revival § 61 (1994)("An action generally is not abated by the death of a party after the cause has reached a verdict or final judgment. . . . while the judgment stands . . .")[e.s.].
[17] Although we have carefully considered each of them, we do not find it necessary to discuss at length any of the other points raised on the appeal.

We do note that in entering final judgment the trial court reduced the verdict by the seven million dollars for which Segal and All Florida settled their potential liability. In view of our rulings which order a new trial, we vacate the setoff without prejudice to the parties to address this issue in light of the proceedings on remand.
We reject Sta-Rite's claim, based on McCutcheon v. Hertz Corp., 463 So.2d 1226 (Fla. 4th DCA 1985), pet. for review denied, 476 So.2d 674 (Fla.1985), that the terms of the releases given to Segal and All Florida effected a complete discharge of Sta-Rite's liability.